**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

American Reprographics Company, L.L.C. d/b/a MinnBlue Digital Imaging, a California limited liability company,

Plaintiff,

v.

Gary Nichols and As Soon As Possible, Inc., a Minnesota corporation,

Defendant.

Civil No. 00-1546 (DWF/SRN)

**MEMORANDUM OPINION AND ORDER**

---

Karen A. Janisch, Esq., Rider, Bennett, Egan & Arundel, 333 South Seventh Street, Suite 2000, Minneapolis, Minnesota 55402, for Plaintiff.

Marlene S. Garvis, Esq., Jardine, Logan & O'Brien, 444 Cedar Street, Suite 2100, St. Paul, Minnesota 55101, for Defendant Gary Nichols.

Joseph B. Nierenberg, Esq., Nierenberg Law Office, 701 Fourth Avenue South, Suite 1700, Minneapolis, Minnesota 55415, for Defendant As Soon As Possible, Inc.

---

## Introduction

Plaintiff American Reprographics Company, L.L.C., d/b/a MinnBlue Digital Imaging ("MinnBlue") seeks a temporary restraining order against its former employee, Gary Nichols, immediately enjoining Mr. Nichols from working as an employee of Defendant As Soon As Possible, Inc. ("ASAP"). The Plaintiffs also seeks to prohibit Mr. Nichols and ASAP from soliciting MinnBlue's customers, known prospective customers, or employees, and from using or

FILED JUL 25 2000
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

disclosing MinnBlue's confidential information. MinnBlue also seeks expedited discovery in this matter.

For the reasons stated, including a balancing of MinnBlue's legitimate business interests against Mr. Nichols' right and need to earn a livelihood, the motion is granted in part and denied in part. The motion is denied as against ASAP for lack of evidence. Finally, discovery and settlement issues are referred to the magistrate judge.

**Background**

MinnBlue's primary business includes the production and sale of digital images and digital imaging services. MinnBlue's products and services include large format, short run, full-process color images, photography services, blueprinting, and other reprographics services. Its offices are located in Minneapolis, Minnesota, at 2001 East 24th Street.

In July of 1997, MinnBlue hired Defendant Nichols as its Director of Sales and Marketing. During the first substantive meeting regarding the position, Mr. Nichols was informed that the position required him to execute a non-compete agreement. Mr. Nichols was also informed of the general nature of MinnBlue's non-compete and non-solicitation requirements.

MinnBlue requires all new officers, supervisors, managers, and sales staff to enter into non-compete, non-disclosure, and non-solicitation agreements as a condition of being hired. All MinnBlue employees are also required to sign a confidentiality agreement, under which the employees agree not to disclose or utilize any of MinnBlue's confidential information for the benefit of any person or entity other than MinnBlue. If a prospective employee is not willing to enter into the non-compete, non-disclosure, and non-solicitation agreements, hiring discussions are discontinued with that person.

On July 11, 1997, MinnBlue forwarded a packet to Mr. Nichols that included a letter summarizing the offer of employment, a confidentiality agreement, and a copy of the Employment Agreement, which contained the non-compete, non-solicitation, and non-disclosure terms. Mr. Nichols signed the documents before he commenced work.

The Employment Agreement between MinnBlue and Mr. Nichols stated that "Employer employs the services of Employee initially as the Director of Sales and Marketing." (Agreement at ¶ A.) The Agreement thereafter contained certain provisions as follows:

> 4. During Employee's employment with Employer and for a period of one (1) year after resignation or termination of Employee for any reason, Employee shall not, either directly or indirectly, for himself or herself, as employer, principal, agent, financier, partner, stockholder, advisor, beneficiary or otherwise, in any capacity or relationship whatsoever, or through or on behalf of or in conjunction with any person, firm, association, corporation or other entity:
>
>> A. Solicit, divert or attempt to solicit or divert any customers or known prospective customers of Employer to himself or herself or to any other person, firm, association, corporation or other entity;
>>
>> B. Solicit or attempt to solicit any employees of Employer to leave their employment with Employer; or
>>
>> C. Compete in the business of providing graphic services similar to employer, or otherwise working for any occupation, business or interests that are similar to or the same nature as, or competitive with the Employer that (1) is within fifty (50) miles of Employee's most recent business, or (2) is in an area in which Employee was doing business for Employer.
>
> 5. The Employee agrees that the knowledge and information acquired by the Employee concerning Employer's business, production techniques, technical data, supplier lists, cost or pricing data, historical data, purchasing information, financial information, customer accounts, advertising, marketing, accounting methods and/or techniques, personnel information, other business information or records, its customers and their names and addresses constitute a vital part of the Employer's business and are by their very nature trade secrets and confidential knowledge and information required (sic) by the Employee only through employment and training by Employer. Confidential information also includes, but is not limited to, (1) methods of conducting or obtaining business including know-how and trade secrets, (2) inventions, discoveries, improvements,

> formulas, practices, processes, methods of processes, whether patentable or not, directly or indirectly related to the Employer, and (3) any other information or confidences that Employee acquires in the course of his or her employment, no matter from where or in what manner such information may have been acquired. Therefore, the Employee agrees that he or she:
>
> A. Shall never disclose or use this or any other confidential information acquired as a result of his or her employment by employer;
>
> B. Utilize any such confidential information or any affiliation with the Employer for the gain, advantage or profit of any entity other than the Employer;
>
> . . . .

(Employment Agreement at ¶¶ 4,5.)

The Agreement also provided that Mr. Nichols was required to return all confidential materials upon cessation of his employment:

> Upon termination for any reason or upon resignation, Employee shall immediately vacate the Employer's office facilities and shall return to Employer all papers, documents, books, manuals, materials and instruments placed in his or her custody or obtained by Employee during the course of his or her Employment, whether prepared by Employee or others, and Employee will not retain copies of such papers, documents, books, manuals, materials or instruments for any purpose whatsoever and shall not make or permit to be made, except in pursuance of his or her duties hereunder and with the express written approval of Employer any copies, abstracts or summaries of the material referred to in this paragraph. Employee further agrees not to make any public announcement or statement that Employee was formerly employed by the Employer without the Employer's written consent.

(Employment Agreement at ¶ 3.)

As an executive, Mr. Nichols had access to significant confidential information regarding MinnBlue, including its sales and marketing practices, customer contacts and order information, and technological information about MinnBlue's imaging products and services.

On or about December 20, 1999, MinnBlue hired a new Director of Sales and Marketing, and Mr. Nichols was demoted to a position as a sales representative.

MinnBlue then terminated Mr. Nichols' employment effective March 31, 2000.

In June of 2000, MinnBlue learned that Mr. Nichols had begun working for ASAP, allegedly a competitor of MinnBlue. ASAP's offices are located at 3000 France Avenue South in St. Louis Park, Minnesota, well within 50 miles of MinnBlue's offices. MinnBlue alleges that Mr. Nichols has attempted to solicit MinnBlue's customers and other MinnBlue employees to leave MinnBlue in favor of ASAP, in violation of the non-compete and non-solicit provisions of the Employment Agreement. MinnBlue also alleges that Mr. Nichols did not return MinnBlue's confidential financial information upon termination of his employment, in violation of Paragraph Three of the Employment Agreement.

**Discussion**

The test for whether a preliminary injunction should issue was set forth by the Eighth Circuit in Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.3d 109 (8th Cir. 1981). An injunction may be granted only on consideration of:

(1) the probability that the movant will succeed on the merits;

(2) the threat of irreparable harm to the movant;

(3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and

(4) the public interest.

Id. at 113. A temporary injunction is an extraordinary equitable remedy that serves to maintain the status quo pending a trial on the merits. Queen City Construction, Inc. v. City of Rochester, 604 N.W.2d 368, 372 (Minn. Ct. App. 1999). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).

**1. Likelihood of Success**

When a non-compete agreement is entered into at the inception of the employment relationship, no independent consideration is necessary to support the agreement. Overholt Crop Ins. Service v. Bredeson, 437 N.W.2d 698, 702 (Minn. Ct. App. 1989). Mr. Nichols signed MinnBlue's Employment Agreement when his employment commenced. Therefore, the Employment Agreement is not unenforceable for lack of consideration.

Mr. Nichols argues that the Employment Agreement only applied to his position as Director of Sales and Marketing and that, once he was demoted to a position as a sales representative, the Employment Agreement was no longer in effect. However, the Employment Agreement stated that Mr. Nichols was employed "initially as the Director of Sales and Marketing" and then explicitly stated that the Agreement applied "[d]uring Employee's employment with Employer and for a period of one (1) year after . . . ." (Employment Agreement at ¶¶ A, 4.)

The interpretation of the meaning of a contract is a question of law where the terms contained therein are clear and unambiguous. Superior-FCR Landfill, Inc. v. County of Wright, 59 F. Supp.2d 929, 934 (D. Minn. 1999). In the present matter, the explicit and unambiguous language of the Employment Agreement stated that its terms were in effect for the period of Mr. Nichols' employment and for one year thereafter; consequently, the terms of the Employment Agreement were not limited as to Mr. Nichols' specific position. The Employment Agreement is therefore valid and enforceable to the extent its terms are reasonable.

A court may enforce a non-competition clause to the extent it is necessary to protect the reasonable interests of an employer, and does not impose unreasonable restrains on the rights of the employee. Klick v. Crosstown State Bank of Ham Lake, 372 N.W.2d 85, 87 (Minn. Ct. App.

1985). Under the "blue pencil doctrine," as followed in Minnesota, a court can take an overly broad restriction and enforce it only to the extent that it is reasonable. Klick, 372 N.W.2d at 88.

The Employment Agreement applies for a period of one year after termination of employment, a duration that is generally enforceable. Specifically, the Employment Agreement prohibits Mr. Nichols from soliciting any of MinnBlue's employees, customers, or known prospective customers, a restriction which the Court finds reasonable and enforceable.[1] However, the Employment Agreement also purports to prohibit Mr. Nichols from "working for any occupation, business or interests that are similar to or the same nature as, or competitive with" MinnBlue within fifty miles of MinnBlue's offices. (Employment Agreement at ¶ 4(C).) First, the record does not clearly establish that ASAP is a competitor of MinnBlue's within the meaning of the Employment Agreement. Additionally, Mr. Nichols is sixty years old and worked for MinnBlue for three years, the last several months as a sales representative. This provision would prohibit Mr. Nichols from earning a livelihood in the line of work for which he is qualified and is broader than necessary to protect MinnBlue's legitimate business interests.

The Court will therefore "blue pencil" the agreement between Mr. Nichols and MinnBlue as follows:

> For a period of one year following the termination of his employment with MinnBlue, Gary Nichols is prohibited from working for ASAP, or any other business entity, in any part of the business in which the entity competes with MinnBlue, including selling the same type of products or services. Mr. Nichols is further prohibited from contacting any of MinnBlue's customers or known

---

[1] Mr. Nichols alleges that he made a simultaneous oral agreement that certain customers were exempt from the Employment Agreement, including Business Incentives, Inc., Honeywell, Josten's, LifeTouch, 3M and Maurices. However, evidence of a simultaneous oral agreement cannot be used to vary the terms of a written contract. Deschler v. Brown & Williamson Tobacco Co., 797 F.2d 695, 696-97 (8th Cir. 1986). In addition, Mr. Nichols' purported agreement directly contradicts both the intent and the explicit language of the Employment Agreement.

prospective customers for any purpose, including Business Incentives, Inc., Honeywell, Josten's, LifeTouch, 3M and Maurices.

As Mr. Nichols and ASAP both assert that Mr. Nichols does not work for ASAP in a capacity that competes with MinnBlue, this modified restriction should allow Mr. Nichols to earn a livelihood while protecting MinnBlue's legitimate business interests.

Because the Employment Agreement, as modified, is valid and no broader than necessary, MinnBlue has shown a likelihood of success against Mr. Nichols on the merits. However, MinnBlue has not presented sufficient evidence to support its claims against ASAP. There is no evidence that ASAP had any knowledge upon hiring Mr. Nichols of Mr. Nichols' non-compete agreement with MinnBlue, nor any evidence in support of MinnBlue's other claims against ASAP as to, for example, misappropriation of trade secrets or unfair competition.

**2. Irreparable Harm**

To be entitled to an injunction, a movant must show that it faces irreparable harm and has no adequate remedy at law. Queen City, 604 N.W.2d at 372.

Irreparable harm may be inferred from the breach of a restrictive covenant in an employment contract. Overholt, 437 N.W.2d at 701. The possible disclosure or use of confidential information such as customer information, is also relevant in determining the potential harm to the former employer. Medtronic v. Gibbons, 684 F.2d 565, 569 (8th Cir. 1982).

MinnBlue has submitted evidence that Mr. Nichols had access to confidential information regarding customers, business practices, and MinnBlue's products and services. As MinnBlue has successfully established the existence of a valid restrictive covenant between MinnBlue and Mr. Nichols, MinnBlue has made an adequate showing of irreparable harm.

**3. Balance of Harms**

In balancing the harms, the movant must show an irreparable harm to trigger an injunction, while the nonmoving party need only show substantial harm to bar it. Pacific Equipment and Irrigation, Inc. v. Toro Co., 519 N.W.2d 911, 915 (Minn. Ct. App. 1994). Weighing MinnBlue's legitimate business interests against Mr. Nichols' need to earn a livelihood, the balance of harms favors the issuance of a limited temporary restraining order that allows Mr. Nichols to continue his employment at ASAP, so long as Mr. Nichols is prohibited from working in any area in which ASAP competes with MinnBlue, soliciting MinnBlue's customers and known prospective customers, or from disclosing confidential information.

**4. Public Interest**

Finally, the public interest is served by upholding valid restrictive covenants, and restraining unfair competition does not violate public policy. Millard v. Electronic Cable Specialists, 790 F. Supp. 857, 863 (D. Minn. 1992).

**Conclusion**

In accordance with the valid Employment Agreement between Mr. Nichols and MinnBlue, Mr. Nichols is enjoined from soliciting MinnBlue's customers, known prospective customers, or employees and from using or disclosing MinnBlue's confidential information. The Court acknowledges that the denial of the temporary restraining order as to Mr. Nichols' employment with ASAP is a close issue. However, the Court finds that the injunction as issued is consistent with MinnBlue's legitimate business interests when weighed against Mr. Nichols' need and right to earn a livelihood.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. The Plaintiff's Motion for a temporary restraining order and for expedited discovery (Doc. No. 2) is **GRANTED IN PART** and **DENIED IN PART**.

2. The Motion by the Plaintiff for a temporary restraining order is **DENIED** as to Defendant As Soon As Possible, Inc.

3. The Plaintiff's Motion for a temporary restraining order is **GRANTED** as to Defendant Gary Nichols as follows:

> For a period of one year following the termination of his employment with MinnBlue, Gary Nichols is prohibited from working for ASAP, or any other business entity, in any part of the business in which the entity competes with MinnBlue, including selling the same type of products or services. Mr. Nichols is further prohibited from contacting any of MinnBlue's customers or known prospective customers for any purpose, including Business Incentives, Inc., Honeywell, Josten's, LifeTouch, 3M and Maurices. Defendant Nichols is further enjoined from soliciting any of MinnBlue's employees to leave their employment with MinnBlue.
>
> Defendant Nichols is enjoined from using or disclosing MinnBlue's confidential information or trade secrets. Defendant Nichols is further directed to return to MinnBlue any and all confidential materials within seven (7) days of the date of this Order.

4. The Plaintiff's motion for expedited discovery is hereby referred to Magistrate Judge Susan Nelson for the purposes of settlement discussions and the setting of an appropriate discovery schedule.

Dated: July 25th, 2000

DONOVAN W. FRANK
Judge of United States District Court